The second argument of the morning is in Appeal No. 23-12-07, David Walton v. Ashley Newman-Nahas Okay, is it Mr. Nahas? Yes, Your Honor. Okay, can you hear and see us okay, remotely? I can. Can you hear and see me okay? We can, and you may begin when you're ready. Good morning. May it please the Court. My name is Newman-Nahas. It is my honor to appear today before you on behalf of Mr. David Walton, the appellate. This appeal arises out of Mr. Walton's 1983 claim asserting that his Eighth Amendment rights were violated when, as an inmate, he was involved in a sexual relationship with a pelly, a prison employee who also happened to be his nurse and on whom he was dependent for special treats, including contraband drugs and a cell phone, not to mention medical care. The trial court granted summary judgment on the ground that the sexual conduct was consensual. We believe this court should reverse the trial court's ruling for two primary reasons. First, in light of evolving standards of decency, the time has come for this court to hold that inmates categorically lack the capacity to consent to sexual conduct with prison officials, and since the trial court's ruling assumed otherwise, this holding would require reversal. And secondly, if this court were not to hold that consent were impossible as a legal matter, this court should at the very least require that any attempt to establish consent as a factual matter be subject to a rebuttable presumption that would require the official to negate the existence of any factors of coercion, as other circuits have done. And doing that here, I'll argue, would also require reversal since those typical factors were not negated. Now, first the question of capacity... Mr. House, could I ask you a question about the presumption framework that was adopted by the Ninth and Sixth Circuits? Yes. In application, isn't that presumption standard basically the same thing as the per se rule that you urge us to adopt, just in more specific circumstances? So, for example, the Ninth Circuit says that the presumption applies, and then the defendant has to provide that facts that there are no coercive factors, such as one of the things that the court talks about is where a prison official gives and whatnot to the prisoner. Well, if that's the case, doesn't that just become a per se rule in those circumstances? So the way I understand it is that what the per se rule would suggest is that there's a structural set of factors that globally undermine capacity consent. What the presumption would allow is for the exceptional case where in those circumstances, those factors were absent. And so to answer your question, yes, if those factors are present, then yes, the effect of the presumption would be the same as the effect of the per se rule. But the difference, I think, would be in that the per se rule would contemplate the possibility of certain local situations that are the exception to the general rule. And in those circumstances, where say the relationship between the inmate and the official was very attenuated, maybe they were in different parts of the prison. And you might suggest in those circumstances, that the structural reasons behind the per se rule don't apply. And so the presumption contemplates that possibility. I would like to ask you on a kind of a different road for a second or two. The list that you mentioned, you know, the contraband, after Walton and Nels were discovered, did anything occur to Walton that could be considered retribution or retaliation for the sexual activity between the two? I'm not talking about, you know, the time that he was investigated. I'm talking about when everything is done here between the two of them. For instance, could the transfer to the other institution be considered retribution or retaliation? For example, I mean, was that institution a higher security institution? My understanding from the record is that other than that particular fact, there is nothing after they were found out that would suggest retribution. And what I would say too, with regard to the idea of retribution here, I don't think that the transfer is something that I could argue from the record constituted retribution in virtue of it kind of being a more place to be. But my understanding is there is a disruptive component any time there is any kind of transfer. And there is an injury that's associated with that. And so in some sense that it would be retributive independent of whether it's a more onerous environment to be in. It's just a different environment and it kind of unsettles your familiar relationships and experiences. So I think that fact could ground an inference in front of the jury of some kind of injury that stemmed from. Yeah. I also was wondering about something else. The district court refused to consider Walton's statement from his response to the defendant's proposed statement of fact, that he did not say no or stop because it was included in, it was not, I'm sorry, it was not included in his complaint, his declaration, or as I recall, his deposition on appeal. Um, nurse Neils is arguing that we should similarly refuse to consider Walton's statement. What's your response to that? So my understanding is that there was a statement that he made in his response, wherein he suggested that he was afraid of retribution. And that was not in the sworn testimony that was attached to his summary judgment. My position on that is first, that what was in the record included facts from which that conclusion could be inferred. And so for example, one of the portions of the deposition that Apelli excerpts as being part of the summary judgment record that this court should limit itself to includes his statement. I'll pull that up in just one second. Yeah. So it's page 32 of the deposition, which is page 62 of Apelli's supplemental appendix. He says there, quote, I wasn't looking to get myself, you know, in any, you know, and sorry, let me, I cut it off here. And they ask him, why didn't you report? And he says, first, of course, that the female attention in that context is hard to turn down. But he also says, I wasn't looking to get her in any trouble. And I wasn't looking to get myself, you know, in any. So I think there's sworn testimony that supports the idea that perhaps he was afraid to report. And then the second point I would make on this is I also think that it's somewhat immaterial because there are so many other factors that are not in dispute that would also support the reversal that we're requesting under a presumption of non-consent rule or under the rule this wouldn't matter. Yeah. You see? Yeah. Well, I think retaliation in that atmosphere is a really onerous consideration. Mr. Nahas, can I ask you a, what I intend is a bit of a line drawing question that maybe you could help us with. How do you recommend that courts define sexual conduct for purposes of the application of either rule, whether it's a presumption or a per se rule? Yeah, I was kind of grappling with this because I think it's sort of the baldness paradox, right? Where, you know, how many hairs do you have to lose to go from having a full head of hair to being bald? You know, the exact transition is kind of vague and difficult, but, you know, we know that there's Mr. Clean and then there's Fabio. And so, you know, it's a spectrum. Holloway identifies kind of at one end of the spectrum, incidental, inadvertent, one-off touching that is inappropriate, but doesn't necessarily reach the level of sexual conduct that implicates the Eighth Amendment. What kind of sharp principle can I suggest? I don't know that I can. I think it's one of those things that maybe should go to the jury, that it's part of why it's inappropriate to dismiss this as a matter of law, is that the boundaries of some of the categories that inform this inquiry are not entirely amenable to kind of like a sharp rule. But in terms of what we would suggest is that anything that is sexual, in that it's ongoing, that involves the genitalia, I mean, I think there are some clear-cut cases. And in our case, I think, would fall under more of the straightforward portion of the spectrum, where I don't think that... Yeah, I mean, I agree with you on these facts, that that question is not squarely before us. But if we were to agree with either of your positions, your primary position or your secondary position, I would think of the district courts in our circuit would be quite interested in how that term is defined, given the range of conduct that could underlie a 1983 Eighth Amendment claim. Right, and one suggestion would be to use the definition promulgated by the Department of in their... in the standards reflecting the PREA Act, right? So there, sexual abuse is defined, and it involves uncovering genitalia, buttocks, breasts, voyeurism. It has quite a, you know, I think, useful set of guidelines. When she touched his left arm, okay, would you include that? I think in and of itself, no. When she... That was all that happened between them, no. When she grabbed his shirt. You know, under Holloway, probably, if that's all we had, probably no. But it would be the accumulation of further conduct and kissing and, you know, some of the other conduct. Do you see any problem if we were to say, for example, conduct that is undertaken for purposes of sexual gratification? Now, you might say, what does that mean that way? But going back to the first point that you made about juries are capable of being instructed and finding facts and looking at all kinds of fact patterns, would that suffice? Or is something like that too general in your view? I think it's too general. You need two elements, I think. One is the purpose, and the other is the objective. The intrinsic character of the act has to coincide with what our human conventions of sexuality would recognize as an instance of sexual conduct, in addition to the purpose of component. So in order, I think, to implicate the Eighth Amendment, you have to have that culpable state of mind, which is what the purpose inquiry would get us at. But what you do has to also fall under what we reasonably would recognize as an instance of sexual conduct. Yeah, that's what I thought you might... I appreciate your answer. And it's that second part that is the hardest part. Right. And the way I think about it, right, is that we have vagueness in a lot of moral categories. And that's kind of just why I think the Supreme Court and Atkins suggest, hey, let's look at what the legislative enactments tell us and see if we can glean from them ways to operationalize vague boundaries. But I think the existence of kind of edge cases, though, shouldn't necessarily cause us too much pause about having rules that will at least encompass some of the central cases. Okay. Mr. Nahas, could I ask you a question? One of the disputes that the parties have is about whether or not we can consider the deposition excerpts that were not submitted to the district court in the underlying motion for summary judgment. I understand this is not a unique situation for appellate lawyers when they are looking at a case on appeal. But typically, we limit ourselves to what the district court had to consider. And while some of the excerpts that you point out, I think, could be supportive of your client's assertions, can you tell us how we can go about, what is your best argument for how we can go about considering those additional deposition excerpts that you have submitted on appeal? So my impression here is that there's kind of two different issues. One is if we're evaluating whether the trial court, based on the record that the trial court was confronted with, right, whether the, if we're trying to assign error to the trial court based on that record, then no, I don't think the additional excerpts are appropriate for that inquiry. However, I think that the court of appeals, though, can look at the entire record below to consider things, for example, like, hey, is this reversible error? Is this harmless error? I guess my question is, I was, we looked to see if the record below anywhere had these transcript excerpts, say, in response to motion to compel, or anywhere else in the record. But we couldn't find a place in the docket, in the whole of the district court's docket, where these excerpts were submitted. And so I guess I'm a bit wary of going beyond not only the summary judgment record, but the actual, the docked entire record that the district court had, and wondered what would be your response to that? I think our response to that would be that in terms of the relief that we're requesting, we do not need to go beyond the record that is encompassed by the record on summary judgment and the docket. To the extent that the deposition excerpts go beyond that, I don't think that they are essential in any way to the relief that we're requesting. I mean, we're relying, right, in the first instance on legislative facts, right, for our per se rule. And for the second, you know, request and the alternative, we are not in any way really relying. I mean, I think the only issue that required going beyond the record on summary judgment was some of the details concerning his theory of why he feared retribution. But I think that is something that also follows from what was in the record, both in terms of what was before the trial court on the docket. But I mean, I think for purposes of our first point, we're looking at legislative facts. And for purposes of our second point, the rebuttable presumption, his dependence on the quintessential carrots that the Ninth Circuit and the Sixth Circuit has identified as undermining the capacity to meaningfully consent, I don't think those are really even in dispute. I mean, their response is that, hey, he conceded enjoyment. He was happy, right? And to me, that is a legal question for this court is, hey, if there's a dispute about the capacity to consent, and if there's a reason to say in these circumstances, capacity is vitiated, well, then we're not going to credit an expression of consent. And I think that's the real argument here, which I don't think in any way really turns on some of these technical dis, questions about the record, which I, and I regret that we went past the record for background, I think it, it, it distracts from the real questions, which I think turn on legislative facts, and questions that are squarely in the record. Thank you. Okay, Mr. Nahas, we will, we'll give you a minute in rebuttal, given the dialogue we've had here. Let's hear from Is it Mr. Shepior? Shepior. Good morning to you. Thank you, your honors. May it please the court. My name is attorney Vincent Shepior. I represent the defendant appellee, Ashley Nells. To begin with, I, I want to make sure that the court sort of understands our position on the facts of the case. My client absolutely 100% denies the allegations that the plaintiff made in this case. But I went and I took his deposition. And it was based on his own deposition testimony that we moved on summary judgment, even if the court accepts everything that he says, this does not rise to the level of an eighth amendment violation. And I also think it's important to start with what brings us here. This is a civil claim under 1983 for an alleged violation of Mr. Walton's eighth amendment constitutional right to be free from cruel and unusual punishment. When we talk about consent and the criminal statutes that exist, and even this evolving standard of decency, I think that there is a difference between the criminal statutes on the books and the purpose of a civil case, a civil claim. When we talk about the elements that Mr. Walton has to prove for an eighth amendment claim, there's both of the objective prong and the subjective prong. And some of what I think the question was going back to the purpose of sexual gratification, I think goes to the subjective prong. But the cases that we've relied on focus more on the objective prong, whether he can prove an injury. And so especially if we go back and we look at this framework of a presumption of non-consent adopted by the sixth and ninth circuits, it turns that burden of proof on its head because a plaintiff bringing a 1983 claim for a constitutional violation has the burden of proving the objective element that he sustained an injury. You know, you've argued and you are arguing that the court should not adopt a presumption of consent because it would impermissibly shift the burden of proof from plaintiffs to defendants. But there are other areas of the law in which we regularly apply presumptions. For example, in Title VII cases, there's McDonnell Douglas' balancing framework. Our court has already recognized the enormous power disparity in the confinement context. Why then should we not adopt a presumption of non-consent given that enormous power disparity? Yes, I think for two reasons, actually. One, I think it actually goes back to the point that was discussed earlier of the various levels of what sexual abuse or harassment would mean in the institution. That if all the plaintiff has to do is allege that there was some sexual contact, and then the burden is shifted to the defense to disprove these other elements of coercion and control, I think it would present a problem for district courts because, as your honors have sort of addressed earlier, in this situation where the fact pattern that we're discussing is that there was a voluntary free sexual relationship, these one fact dependent elements of contraband and snacks are usually going to be present there. They're present in many of the cases that other district courts and the other four circuits who have addressed this issue have looked at. When you're alleging that there's going to be a voluntary sexual relationship, oftentimes there's going to be these types of fact dependent favors that have been discussed. I think that adopting the presumption here would put an enormous burden on the defendant where the have to prove really the elements of his claim. The other thing I think goes to when the appellant talks about the evolving standards of decency and the criminal statutes that have been adopted both by the federal court as well as the states, the purpose of those statutes is to deter such behavior, to punish a prison official if they engage in these types of relationships. But I think adopting either a bright line rule or a presumption encourages the behavior. It encourages the behavior from the perspective of a prisoner that they either know that there's a bright line rule, and we see that even in this case where the appellant says, it doesn't matter if I liked it, if I enjoyed it, if I wanted it, can't legally consent, and so just the fact that there was a sexual relationship, I'm entitled to relief under 1983. But also under the presumption, it creates that same encouragement of this type of behavior. It gives them a motive to profit to seek out these types of relationships, and if there's a presumption that the defendant, that the prison official is going to have to overcome, I also think that it runs the risk of deterring prison officials from reporting behavior that they could be concerned, okay, now I need to defend myself. Well, isn't the answer to that that prison officials just shouldn't engage in any sort of sexual conduct with prisoners? And so I guess I don't really see, it seems like the criminal statutes and whatnot are evidence of, or indications that this is activity that the state legislatures do not think is appropriate to the extent that it's criminal. My question about the presumption framework is a little bit different, which is typically when we think of consent, we think of consent as an affirmative defense. Here we're dealing with an Eighth Amendment claim, and so in the context of 1983 case, does the defendant have the burden to prove consent, or does the plaintiff have the burden to prove non-consent? Because I think that matters when we're talking about any sort of presumption or burden shifting. Yeah, to address your first question, we are not asking the court to condone this behavior in any way. It's inappropriate, and I agree with you, and I agree with the criminal laws that are on the books. But that leads into your second question that, no, it's not a defense. There's been a dozen cases throughout the country, district courts, and then the four circuits that have looked at this. Some of them have sort of talked about it in that sense of the defense of consent, but it's not a defense. It's not an affirmative defense that it was consensual. Rather, it goes to that objective prong. Did the plaintiff in the case, the appellant, did he sustain an injury? Was there a harm that he sustained such that he can prove the objective element of his Eighth Amendment claim? So no, I don't believe it's a defense, and I don't think any court has looked at that other than the Sixth and Ninth where they talked about it being a presumption of overcoming these coercive factors that they look at. But I think that the decisions from the Eighth and Tenth Circuit are a less problematic route where they say we're not going to adopt a per se rule. They did not adopt this presumption of non-consent. But rather, they look at this as this is a 1983 claim for an alleged violation of your rights. You have to prove an objective and objective prongs. Can you do that? They focus on the first one, that there was an injury, an unnecessary and wanton infliction of pain. I mean, that's what the plaintiff needs to prove in a 1983 case. Mr. C. Pierre, a case like this requires you to get back, as this dialogue is going, to some of the first principles in the Eighth Amendment area, at least under the test that the Supreme Court has given us. I want to ask you hypothetically, keep all facts the same, but suppose Mr. Walton at the time of the conduct was 17. How would the legal analysis change in your view, if at all? It wouldn't. And that's because, again, it goes to a civil claim. And we addressed that in our case. This court has recently addressed that, I believe, in Buell. And it goes back to the fact that under criminal law in Wisconsin, sexual contact with a minor, although when it's 17, there's some more nuanced rules. But if we're talking about sexual contact with a minor, consent is not a defense. But where it's sexual assault in criminal cases, it's battery in the civil context. And at least in Wisconsin, you have to prove that there was sexual contact and that it was not consensual. Okay. So just to try to flush out some of the principles, assume Mr. Walton was 12. Okay. At what point would the legal analysis change, which I'm interested in, is why? The state law would become more clear, right, as far as what community decency standards are prohibiting sexual conduct with children. How do you analyze it for purposes of the Eighth Amendment? Because you would never get to the point, I don't think, under Supreme Court jurisprudence of saying that Eighth Amendment standards are parallel with synonymous with state criminal law standards. Correct. So what's the principle that teases this out? Well, it's often the courts, and what the appellant asked this court to do here, is where they're asking them to consider the criminal statutes. 1983 is not meant to constitutionalize criminal law or even all tortious conduct. Not all tortious conduct violates the Constitution. Not all criminal law violates the Constitution. And so here, it would be that when a plaintiff brings a civil claim, whether they're a minor or whether they're a prisoner, they have the burden of proving the elements of their claim that they were harmed. The fact that they were a minor is not a per se conclusion that it was unconstitutional. And so I think it goes to a fair question. We know that the justices have accepted some per se conclusions with juveniles, right? Yes. And I think that going back to this court's decision last year from Buell, when it's a civil claim, I think that the court is giving too much power to the criminal statutes. And it goes back to then, if there were facts in the record, that would suggest there is a genuine issue of material dispute, a factual dispute, as to whether there was an injury, whether there was harm, that would preclude summary and judgment. Would you agree that you said looking at the factual record, that the relationship between a particular prison official and a particular inmate, for example, if the official was in charge of providing medical care, or if the official was in charge of supervision and had the power to discipline, that those factors that are specific to the case, that those factors are substantial factors that a district court should weigh on summary judgment? When you say substantial factors, I think that they are factors that can be considered by a fact finder. And I think that if there's dispute of fact, that's something that the district court should look at. Just like any other... And did the district court do that here? Yes. I think the district court looked at what was on the record, what was in his sworn deposition testimony. But did the district court consider the authority that the defendant had over the plaintiff? Because when I looked at the summary judgment order, I had a hard time finding any particular discussion of the relationship between the two. No. And I would say that that was not raised at the district court level. That was first raised on... You agree that that's something that, given the facts, can be relevant to the particular situation and to the issue of consent or non-consent? It could be relevant. I don't think it's relevant in this case based on the plaintiff's own sworn testimony. You know, enjoying... Well, the district court focused almost exclusively on Walton's statements that he enjoyed the contact or the contact. I have two questions. One is, is it your... Is it Ms. Nail's view that enjoying sexual contact demonstrates consent? And is it not true that consent must be obtained before any enjoyment-inducing activity commences? First, I would say that that was, I don't believe, the sole reasoning of the district court. I think that... I didn't say sole. I said almost exclusively. Okay. I think that he testified that, from his perspective, he thought it was factually consensual, that he was a willing participant. But again, it goes back to this issue of consent. And I would say that it would be more reasonably framed as it goes to whether he was sustained harm. What is his harm? What is his injury? And so then, when it goes to the consent, before, my answer would be the same, is can he prove a harm? Can he prove an injury on these facts? But also that I think... Thank you. The fact that she was the staff member on whom Walton relied to obtain medication in order to keep living, so to speak, wouldn't that be enough to create a genuine dispute of material fact? I think that that would then create a per se rule, a bright line rule, because that's what we're always discussing as a prisoner and a prison official. And if we're going to say that, because there's this control in the environment, that that would show a lack of consent, it would be a bright line rule that none of the circuit courts have adopted. Why do you think it would be a bright line rule as opposed to just an assessment of the totality of facts and circumstances? So if you go back to the question that Judge Lee posed about a gift or something like that, you would have to size that up in the whole of the fact pattern. So if you're talking about a relationship that went on for years and there was one token gift at the outset of it that way, it may not inform the analysis that much. If there were multiple gifts or pills being given on the side or some of these others, it may that way. But why can't that just be worked out in each individual case? I agree with that. And I think that is how it should be worked out. And I think that here the district court found that no reasonable jury could find based on the record that Mr. Walton's Eighth Amendment rights were violated. I guess I'm looking at the order again and I just can't find a place in the order where the district court considers that, other than saying that she was a nurse. But if a district court should weigh those things as a relevant factor, considering the totality of circumstances, is this a situation where we have to send it back so the district court can do that? No, I think that those are certainly factors that can be considered when they're presented to the district court, when it's argued from the appellant side, plaintiff side at the district court level. It wasn't actually consensual. I wasn't a willing participant because I was afraid of it. But the district court knew that the defendant was a nurse and the defendant was providing medical attention to Mr. Walton, right? That was part of the record, certainly.  And that's the type of discussion I'm looking for in a district court's opinion and having a difficult time finding. And that wasn't analyzed by the district court level, I think, because of what the appellant said in his deposition transcript. When you read the transcript, I mean, the district court used some strong words that it just felt that there was no reasonable jury that could support it. Okay, thank you. Okay, thank you, Mr. CPR. I appreciate it very much. Thank you. Okay, Mr. Nahas, we'll give you, we went on a little bit there. We'll give you two minutes for rebuttal. Thank you very much. The first point I want to address is the issue of incentives. Appellee kind of raises the specter that a per se rule or a presumption of non-consent would have incentives that would be counter the policy here that I'm arguing for. It may incentivize more conduct. I don't think that's right. I think the real point to think about is if we have a rule that says that consent is possible, what that incentivizes, right, is no sexual conduct with inmates who don't want it, right, but it's neutral with respect to inmates who express that they're okay with it. And I think that's inconsistent. That posture in terms of the incentives that the rule would create, that seems to me wildly out of line with the incentives that are reflected in legislative enactments. The second point I want to speak to quickly is the criminal versus civil. I think this kind of flips the law on its head. The fact that our context that we're willing to criminalize the conduct, to me, that's all the more reason that our standards of decency wouldn't allow it as a defense in the context of the civil inquiry. And then the other thing to note is that, look, the common law of torts doesn't expressly tell the courts they have to look at legislative enactments, whereas the Eighth Amendment does. The third thing I wanted to address was I think that there's this, I think there's a category mistake that kind of runs through the district court's reasoning. I think the district court latches on to the expression of enjoyment and consent, but that presupposes that the expression was capable, right, that there was capacity. And the other thing I want to speak to is the, I think that the question of harm and injury, that really may go to quantification of damages. And there's certainly some of these outlier cases that Apelli's worried about. That's something that can be presented to the jury and perhaps it will result in nominal or limited damages. But I don't think that speaks to whether the first question of capacity consent is addressed. And so for these reasons, we would respectfully request that this court hold, consistent with evolving standards of decency, that the time has come to recognize the inherently coercive context of incarceration requires at the very least a presumption of non-consent, if not a per se rule. Okay, Mr. Nahas, thanks to you. Mr. Cipri, thanks to you again. Mr. Nahas, I know that the court appointed you and your firm to represent Mr. Walton. We very much appreciate you accepting the appointment, the quality of your advocacy, and will take the appeal under advisement. Thank you. Thank you. Okay, the court will stand in brief recess for 10 minutes. Thank you.